UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES ALLEN FLOYD, | Case No. 1:17-cv-150-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| ADA COUNTY, et al., | |
| Defendants. | |

## I. OVERVIEW

Pro se Plaintiff James Allen Floyd complains that he received inadequate medical care while housed in the Ada County Jail in violation of the Eighth Amendment (made applicable to the states through the Fourteenth Amendment). Defendants now move to dismiss this case for failure to state a claim upon which relief can be granted. Dkt. 13. For the reasons outlined below, the Court GRANTS the Motion to Dismiss. Also pending is Floyd's Motion to Appoint Counsel. Dkt. 19. Upon review, the Court DENIES this Motion.

## II. BACKGOUND

On August 25, 2014, officers arrested Floyd and placed him in the Ada County Jail, located in Boise, Idaho. Floyd would remain there until August 2016. Neither party has explained why Floyd was arrested, what he was charged with, or whether he was found guilty of any crime. However, Floyd describes himself as a pretrial detainee when

the events that form the basis of his claims occurred. Floyd asserts that he has a host of medical problems, which Ada County officials failed to adequately address during his time at the Ada County Jail.

On April 7, 2017, several months after Ada County released Floyd, he filed this lawsuit against Ada County, the Ada County Jail, the Ada County Sheriff, and a handful of staff members from both the Ada County Jail and the Sheriff's Department. On May 23, 2017, Defendants filed a Motion to Dismiss for Failure to State a Claim. Dkt. 4. Shortly thereafter, Floyd filed an Amended Complaint, rendering the first Motion to Dismiss moot. On June 16, 2017, Defendants filed the present Motion to Dismiss. The Motion became ripe on July 20, 2017. The Court scheduled oral argument on this Motion for December 5, 2017, at 10:00 a.m. However, Floyd did not appear at oral argument. Defense counsel did appear at oral argument but agreed to submit the pending motions on the briefing. The Court found Floyd waived his right to oral argument and took the Motion under advisement.

Floyd asserts six claims for relief, which fall into two categories. The first category of claims asserts that Defendants were indifferent to Floyd's medical needs, in violation of his Eighth Amendment rights. The claims in this category are based on the following medical conditions: sleep apnea (claim one); Hepatitis C (claim two); ADHD, depression, anxiety, and bi-polar disorder (claim three); foot pain (claim five); and left shoulder pain (claim six). Floyd appears to argue both that the individual Defendants violated his Eighth Amendment rights and that the violation was the result of a County

policy. The second category, which only contains one claim, asserts that the County was indifferent to Floyd's need for outdoor recreation (claim four).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

The Court must construe this complaint "liberally," as Floyd is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citation omitted).

## IV. ANALYSIS

Defendants first argue that Claims One through Four should be dismissed because they are barred by the statute of limitations. Defendants then argue that the Court should dismiss each claim because each fails to meet the Rule 8 pleading standard. The Court first outlines the applicable statute of limitations and explains what is required to state an Eighth Amendment claim. The Court then applies the law to each individual claim.

### A. The Applicable Law

#### 1. Statute of Limitations

"Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions." *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). However, "federal law determines when a civil rights claim accrues." *Id.* (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000)). "Under federal law, 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* (quoting *Tworivers v. Lewis,* 174 F.3d 987, 992 (9th Cir. 1999)). "In Idaho, the applicable statute is Idaho Code section 5-219(4) [], which provides for a limitations period of two years from the date the cause of action accrues." *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1176 (9th Cir. 1993). Because

Floyd filed his complaint on April 7, 2017, any claims that accrued prior to April 7, 2015, are time-barred.

Floyd argues in response that the acts that occurred prior to April 7, 2015, are actionable, despite the statute of limitations, under the "continuing violation doctrine." "[T]he statute of limitations runs separately from each discrete act." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002). However, the acts that occurred prior to April 7, 2015, may be actionable if Floyd's "claims are based, not on discrete acts, but rather on 'a series of acts that collectively constitute one unlawful practice.'" *Del Rosario v. Saade*, No. 1:14-cv-155-REB, 2015 WL 4404864, at *3 (July 17, 2015) (quoting *RK Ventures*, 307 F.3d at 1061 n.13).

The Ninth Circuit has yet to apply the continuing violation doctrine to Eighth Amendment deliberate indifference claims. *See Gipbsin v. Kernan*, No. 2:12-cv-556, 2015 WL 3993073, *3 (E.D. Cal. June 30, 2015). However, other circuits have consistently held that the continuous violation doctrine applies to deliberate indifference claims and that such a claim accrues on the last day officials refused to treat a prisoner's medical condition or on the date he left the jail. *Id.* (collecting cases); *see also Heard v. Sheahana*, 253 F.3d 316, 318 (7th Cir. 2001). District courts within the Ninth Circuit have taken different approaches to this issue. *Evans v. County of San Diego* is illustrative of one of these approaches. No. 06-cv-0877 JM (RBB), 2008 WL 842459, *11-12 (S.D. Cal. Mar. 27, 2008). In *Evans*, the plaintiff injured his knee on January 27, 2004, and remained in custody until June 10, 2004. *Id.* The plaintiff complained that the County failed to provide adequate treatment for his knee throughout this period. *Id.* The *Evans*

court found this constituted a continuing violation that accrued on June 11, 2004. *Id.* In other words, because the County knew the plaintiff had injured his knee and failed to provide any care throughout his time in custody the injury was a continuing violation that accrued on the last day the County could have provided care.

    *MacGregor v. Dial* illustrates a different approach. No. 2:13-cv-1883 JAM AC P, 2015 WL 1405492 (E.D. Cal. Mar. 26, 2015). In *MacGregor* the prisoner alleged that prison doctors were deliberately indifferent to his serious medical needs in treating his hernia on several specific dates in 2005 and 2006. *Id.* at *2-4. Thereafter, the prisoner "continuously complained to medical . . . but was repeatedly ignored." *Id.* at *4. The *MacGregor* court found the prisoner's claims accrued on the specific dates he alleged the prison doctors provided inadequate medical care, because on these dates the prisoner "knew or had reason to know of [the doctors'] deliberate indifference." *Id.* at *7 (citing *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999); *see also id.* at *9 ("[T]his is not a case 'where there is no single incident that can fairly or realistically be identified as the cause of significant harm.'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)). The court's conclusion was "not altered by plaintiff's vague allegation that he continuously complained 'to medical' and was repeatedly ignored until 2012." *Id.*

    As explained below, the Court finds this second approach, laid out in *MacGregor*, to be more persuasive and more applicable to this case.

### *B. Merits*

    Floyd asserts all his claims under 42 U.S.C. § 1983. To state a claim against *an individual* "under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim against *a government entity* under § 1983 (also called a *Monell* claim), a plaintiff must allege "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997)). If Floyd fails to state a valid Eighth Amendment claim, he also fails to state a *Monell* claim because the first element of the *Monell* claim will not be satisfied.

As stated above, in the first category of claims Floyd asserts Defendants were deliberately indifference to his medical needs in violation of the Eighth Amendment. Initially, the Supreme Court only applied the Eighth Amendment to claims of "inhuman techniques of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Supreme Court subsequently "held that the Amendment proscribes more than physically barbarous punishments." *Id.* Now, "[t]he Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,' against which we must evaluate penal measures." *Id.* (internal citation omitted). Accordingly, "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society'" violate the Eighth Amendment. *Id.* (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Under these standards, the government has an "obligation to provide

medical care for those whom it is punishing by incarceration." *Id.* at 103. The standard

for these types of claims is "deliberate indifference." *Id.* In other words, "deliberate

indifference to serious medical needs of prisoners constitutes the 'unnecessary and

wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* (internal citation

omitted). Examples of actionable Eighth Amendment medical claims include a prison

doctor's indifference to a prisoner's medical needs or a prison guard's intentional

interference with prescribed treatment. *Id.* at 104–05. An accident or mere negligence,

however, cannot form the basis of a medical-based Eighth Amendment claim. *Id.*

        An actionable Eighth Amendment claim for inadequate medical care must meet

two elements. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). First, the

plaintiff must allege "the existence of a serious medical need." *Id.* An objective standard

applies to this element. *Id.* "Such a need exists if failure to treat the injury or condition

'could result in further significant injury' or cause 'the unnecessary and wanton infliction

of pain.'" *Id.* (quoting *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006)). "Indications

that a plaintiff has a serious medical need include '[t]he existence of an injury that a

reasonable doctor or patient would find important and worthy of comment or treatment;

the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v.

Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). Second, the plaintiff must allege that a

prison official was "deliberately indifferent." *Id.* A subjective standard applies to this

element. *Id.* "A prison official is deliberately indifferent" under this standard "only if the

official 'knows of and disregards an excessive risk to inmate health and safety.'" *Id.*

(quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Floyd's second category of claims asserts the conditions of confinement violated his Eighth Amendment rights. To state an Eighth Amendment claim based on the "conditions of confinement" "a plaintiff must show [a] serious deprivation and deliberate indifference." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

## B. Application

### a. Claim One: Sleep Apnea

Floyd's first claim alleges that Defendants failed to adequately test for and treat his sleep apnea. Floyd alleges that on September 1, 2014, he submitted a "health request" to the Ada County Jail "explaining that he had quit[] breathing several times, both day and night s[i]nce he had arrived at the Ada County Jail." Dkt. 8, at 3. An individual identified as "Nurse Dean"[1] responded to the request the next day stating, "This is something you can address when you are not in jail." *Id.* Floyd then submitted a grievance on September 4, 2014, asserting that he believed the condition was serious. *Id.* "Nurse Dean responded [by stating] that 'generally the symptoms are consistent with a diagnosis of sleep apnea. Unfortunately, we do not have the ability to perform a sleep

---

[1] It appears that "Nurse Dean" is an individual named Lanea Dean.

study and provide a [CPAP][2] machine[]. If you have a [CPAP] machine at home you can have it brought in, we can have it approved[.]" *Id.* On September 5, 2014, Floyd appealed the denial of this grievance. *Id.* Nurse Dean again stated that the Ada County Jail was unable to outfit Floyd with a CPAP machine. *Id.* In addition, Floyd asserts that an individual named "Carda" "failed to take supervisory corrective action" in regard to his grievance. *Id.* On November 17, 2014, Floyd submitted another complaint regarding his sleep problems. *Id.* On November 21, 2014, Floyd meet with physician assistant Eric Wells who informed Floyd that "they were going to conduct a Jail sleep test." *Id.* Floyd spent that night in a special cell with a finger monitor that showed his heart rate and oxygen saturation levels. *Id.* at 4. A security deputy, "[D]eputy Yamman," came into the cell to check on Floyd hourly. *Id.* Floyd asserts both that he did not sleep the entire night and that Deputy Yamman woke him up every time he entered the cell. *Id.*

On November 25, 2014, Floyd filed another grievance, complaining that the sleep apnea test was inadequate. *Id.* Thereafter he met with Eric Wells who advised Floyd that the test showed his oxygen levels were fine. *Id.* Floyd then filed an appeal, to which "Dr. Clive" responded stating, among other things, that Floyd's sleep apnea was not dangerous in the short term because his oxygen levels were fine. *Id.* Finally, Floyd alleges that Charity Hine "[f]ailed to take supervisory corrective action" on December 11, 2014. *Id.*

---

[2] CPAP stands for continuous positive airway pressure. A CPAP machine is commonly used to treat sleep apnea.

## i. Statute of Limitations

All of the acts Floyd complains of occurred prior to April 7, 2015.  However, Floyd asserts that "[t]he refusal to perform the appropriate test[] or treat [him] for sleep apnea was continu[ous] and ongoing through his whole stay in the Ada county jail until October 2015." *Id.* The Court, therefore, must decide whether this claim is "based, not on discrete acts, but rather on 'a series of acts that collectively constitute one unlawful practice,'" that continued until after April 7, 2015.

As stated above, the Court finds the approach laid out in *MacGregor* more persuasive and more applicable to the current claim than the approach in *Evans*. Floyd identified specific dates in 2014 on which Defendants allegedly refused to provide medical care or provided inadequate medical care. Thus, like in *MacGregor*, on these specific dates Floyd knew or should have known of Defendants' deliberate indifference to his medical needs. 2015 WL 1405492, *6-9. Floyd's claims thus accrued on those dates. None of the specifically alleged incidents occurred within the statute of limitations. Rather, the last discrete act occurred on December 11, 2014—more than two years before Floyd filed this lawsuit.

Accordingly, the Court finds that Floyd's first claim is time-barred.

## ii. Merits

Alternatively, the Court finds Floyd has largely failed to state a valid Eighth Amendment claim in Claim One. Nurse Dean's initial blanket denial of treatment for sleep apnea could be interpreted as deliberate indifference to Floyd's medical needs. A prison official's delay in treatment can constitute deliberate indifference. *Hunt v. Dental*

*Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). Courts have also concluded that sleep apnea may be a serious medical condition. *See Goudlock v. Perez*, No. 08cv204AJB(RBB), 2010 WL 846444, *5 (S.D. Cal. Mar. 13, 2012) (collecting cases). Thus, Floyd has sufficiently alleged that Nurse Dean violated his Eighth Amendment rights. Moreover, Floyd has sufficiently stated a *Monell* claim, because he has alleged that Nurse Dean initially denied him treatment for his sleep apnea pursuant to a custom or policy of Ada County.

However, the subsequent sleep test and determination that Floyd's sleep apnea was not severe enough to require treatment does not constitute deliberate indifference, because "a mere 'difference of medical opinion . . . . [is] insufficient, as a matter of law to establish deliberate indifference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted).

Thus, to the extent Claim One is based on an inadequate sleep test or failure to treat Floyd's sleep apnea after the test, the Court finds dismissal for failure to state a claim upon which relief can be granted is appropriate.

### 2. Claim Two: Hepatitis C

Floyd's second claim alleges that Defendants were deliberately indifferent to his medical needs when they denied him treatment for his hepatitis C. Dkt. 8, at 5. Floyd alleges that he first told "the medical lady (jane doe 2)" that he had hepatitis C. *Id.* Then, on November 17, 2014, Floyd submitted a health request form asking if the Ada County Jail offered "chronic care for Hep C." *Id.* Defendants did not respond to this request for care. *Id.* On December 12, 2014, Floyd filed a grievance complaining that he had not

received a response to his request. *Id.* On December 15, 2014, "Nurse Dean" responded by informing Floyd that the Ada County Jail does "not follow people who have hepatitis c in our chronic care clinic" and stating that Floyd's hepatitis could have been addressed at his November 21, 2014, medical appointment. *Id.* The same day Floyd "[a]ppealed Nurse Dean['s] answer." *Id.* An individual identified as "Mr. Woodcook"[3] responded stating, "we generally don't follow patients with hep c in our chronic care clinic unless they are currently on medication for treatment. If you are currently having symptoms or complications[,] our provider will be happy to meet with you. Please submit a[n] IRF[;] if not you will need to meet with your primary care provider in the community once you are released." *Id.* Floyd does not allege that he filed any more requests for treatment after he received this response. However, Floyd generally alleges that Defendants' failure to treat his hepatitis c was "continuing" and "ongoing" throughout his time at the Ada County Jail and "was based upon a custom and or policy of the Ada county jail." *Id.* at 6. He also alleges that Woodcook and Carda "failed to take any supervisor corrective action" regarding his hepatitis c treatment. *Id.* at 5.

### i. Statute of Limitations

Like with Claim One, Floyd alleges that Defendants failed to provided him adequate treatment on several specific dates, the latest of which was December 15, 2014. Therefore, Floyd's claim accrued at the latest on December 15, 2014. On that day, Floyd

---

[3] Floyd identifies this individual as "Woodcook" and "Woodcock." It appears Floyd is referring to Jason Woodcook.

knew or should have known that he had a claim for deliberate indifference. Because this claim accrued prior to April of 2015, it is time-barred.

ii. Merits

In the alternative, the Court dismissal of Claim Two is appropriate because Floyd has failed to allege facts to support this Eighth Amendment claim. Floyd has not alleged facts that show Defendants were deliberately indifferent to his medical needs. Rather, he acknowledges that Woodcook informed him that the Ada County Jail's medical provider would meet with him to address any "symptoms or complications" associated with his hepatitis C, all Floyd needed to do was submit a proper request. Floyd does not allege that he ever filed such a request. Thus, even liberally construed, these facts do not state a claim for deliberate indifference.

*3. Claim Three: Mental Health Treatment*

In Claim Three, Floyd alleges that Defendants provided him with inadequate mental health care. According to Floyd, he attempted suicide shortly after arriving at the Ada County Jail "by running his head into a brick wall." Dkt. 8, at 6. "[O]fficer Davis and several other officers" then placed Floyd in the "medical unit" where he wore a "turtle suit" for three days. *Id.* At the end of three days officers moved him to "Cell block 8." On September 9, 2014, "jane doe 2" conducted a health assessment of Floyd, during which Floyd informed her that he suffered from depression, anxiety, and bi-polar disorder, and that he had been prescribed "Depakote and Seroquel." *Id.* On November 17, 2014, Floyd submitted a health request that informed the medical staff that he was experiencing more symptoms of depression and anxiety because he was "being locked

down" for so many hours each day. *Id.* When he did not receive a response to his request, Floyd submitted a grievance. *Id.* "Nurse Dean" responded to the grievance on December 15, 2014, by informing Floyd that he was scheduled to meet with a social worker. *Id.* Nevertheless, the next day Floyd "filed an appeal because it had been almost thirty days" since he had requested mental health care. *Id.* It is not clear what came of this appeal. However, Floyd alleges that he never saw a social worker and was never prescribed any medication for the remainder of his time at the Ada County Jail. *Id.*

### i. Statute of Limitations

Unlike Claims One and Two, Defendants never clearly denied Floyd treatment on a specific date. Rather, Nurse Dean told Floyd he would receive treatment, but he never did. Therefore, there is no specific date on which Floyd knew or should have known that he had an Eighth Amendment claim. Because Floyd waited for mental health treatment until he left the Ada County Jail in October of 2016, the Court finds the lack of treatment was a continuing violation that accrued the day he left the Jail. Claim Three, therefore, accrued after April 7, 2015, and is not time-barred.

### ii. Merits

Nevertheless, Floyd has not alleged sufficient facts to state an Eighth Amendment claim based on the denial of mental health treatment. Floyd has sufficiently alleged that he had a "serious medical need." He asserts that he had anxiety, depression, and bi-polar disorder. These conditions caused him to attempted suicide when he first arrived at the Ada County Jail. Dkt. 8, at 6. Later, these conditions caused him to "pick[] his fingers, bit[e] his nails, and sometime[s] punch[] hi[m]self in the head." *Id.* However, Floyd has

not alleged enough facts to show that any individual defendants were indifferent to his medical needs. Liberally construed, the Amended Complaint does allege that Nurse Dean was aware of Floyd's mental health problems and that Nurse Dean told Floyd that he had an appointment with a social worker. Floyd never met with a social worker. The Amended Complaint does not allege that Nurse Dean was deliberately indifferent to Floyd's needs in any particular way. For example, Floyd does not allege that Nurse Dean lied about scheduling the appointment. Instead, at most the alleged facts show negligence. Without more, Floyd has failed to state an Eighth Amendment claim. Because Claim Three fails to adequately state an Eighth Amendment claim, it also fails to state a *Monell* claim. However, the Court finds Floyd could allege additional facts to support this claim. Therefore the Court dismisses this claim without prejudice and grants Floyd leave to amend.

### *4. Claim Four: Denial of Access to Outdoor Recreation*

Floyd next alleges that between November 4, 2014, and January 12, 2015, he received only three hours of outdoor recreation. Dkt. 8, at 7. Floyd submitted a grievance requesting more outdoor recreation time on January 1, 2015. *Id.* Officer Rodante responded to the grievance by telling Floyd that outdoor recreation time had been cancelled because the outside temperature had "been in the single digits" and "there was ice on the rec yard." *Id.* Floyd appealed. *Id.* Officer Rodante responded to the appeal by quoting the Jail's policy of cancelling outdoor recreation when the weather is inclement or when there is a safety concern. *Id.* Floyd argues that this policy violates his Eighth Amendment rights.

### i. Statute of Limitations

The alleged denial of outdoor recreation ended on January 12, 2015. The claim thus accrued on that day. Floyd waited more than two years from the day the claim accrued to file his Complaint. The two-year statute of limitations thus bars this claim.

### ii. Merits

A jail's denial of exercise to an inmate can be "'sufficiently serious' to constitute a valid claim under the Eighth Amendment." *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) (finding "prison officials' denial of out-of-cell exercise to [inmate] for 13 months and 25 days was 'sufficiently serious' to constitute a valid claim under the Eighth Amendment"). Exercise is "one of the basic human necessities protected by the Eighth Amendment," *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). Moreover, a temporary deprivation does not violate the Eighth Amendment if prison officials have a "reasonable" justification for the deprivation. *Thomas*, 611 F.3d at 1150.

Jail officials denied Floyd outdoor recreation for just over two months. Floyd does not allege that this temporary deprivation caused him to experience any adverse "medical effects." Therefore, the temporary deprivation, as alleged, was not sufficiently severe to violate Floyd's Eighth Amendment rights. Further, according to Floyd's own Amended Complaint, Jail officials cancelled outdoor recreation because of safety concerns. These safety concerns constitute a reasonable justification for the short term deprivation of

outdoor recreation time. For all of these reasons, Floyd has failed to state a valid Eighth Amendment claim based on the Jail's denial of outdoor recreation time.

*5. Claim Five: Foot Pain and Pain Management*

Claim Five is based on two separate sets of complaints: the Jail's refusal to supply Floyd with shoes and the Jail's refusal to allow Floyd to keep ibuprofen on his person 24-hours a day.

Floyd first asserts that he developed severe foot pain in March of 2015. Dkt. 8, at 8. On April 1, 2015, Floyd submitted a medical request for shoes. *Id.* A staff member ("unknown jane doe 3") denied this request, stating "we don't give shoes." *Id.* On an unspecified date, Floyd resubmitted his request for shoes. *Id.* A staff member again denied the request, stating "inmate worker shoes are available off commissary, per protocol you do not qualify for special shoes." *Id.* On a later unspecified date, Floyd filed a formal grievance in which he stated he never received a medical diagnosis for his foot pain and that he could not purchase shoes himself because he was indigent. *Id.* Woodcook responded to the grievance by stating (1) that shoes were available for purchase on commissary; (2) that he was already taking 600 mg of ibuprofen each day to help him manage his pain; (3) that he could have orthotics prescribed by a community doctor brought to the jail; and (4) that he could request an appointment if he wished to discuss pain management. *Id.* Floyd maintains that shoes were not available for purchase on commissary in his cell block (cell block 8). *Id.* He also complains that no one ever examined him to determine what was causing his foot pain; however, it also appears that Floyd never requested an appointment for this purpose. *Id.*

On June 3, 2015, Floyd filed a grievance concerning access to pain medications. *Id.* at 9. According to Floyd, his ibuprofen was supposed to be "keep on person" medication, so that he could take it whenever he needed it. *Id.* He complained that he did not always have access to the ibuprofen, and sometimes went long stretches of time without it. *Id.* Someone identified as "Farewell" responded to the grievance by explaining that there is a risk the inmates may sell or trade the medication, so Floyd could not have access to it at all times. *Id.* Floyd argues that the denial of access to this medication 24 hours a day was a violation of his Eighth Amendment rights and was based upon a custom or policy of the Jail. *Id.*

<u>i. Statute of Limitations</u>

It is not clear when exactly Floyd complained to the Jail about his foot pain. He first began complaining about his foot pain in March of 2015. He then continued to complain into the month of April. The statute of limitations cut off is April 7, 2015. Because Floyd has not specified the dates on which he complained in April of 2015, the Court cannot definitively conclude that this claim is or is not timely. Therefore, the Court dismisses this claim to the extent it is based on his foot pain, but gives Floyd leave to amend to specify when exactly he complained to Jail employees about his foot pain.

Floyd complained about not having access to ibuprofen in June of 2015. This is after the statute of limitations cutoff date. Thus, to the extent the claim is based on access to pain medication, the claim is timely.

## ii. Merits

Even assuming Floyd's foot pain constitutes a "serious medical need," the Court also concludes that dismissal is appropriate because Floyd has not alleged facts that show any of the Defendants were deliberately indifferent to his medical needs. According to his own complaint, Jail officials informed Floyd how to obtain shoes, gave him ibuprofen to help him manage his pain, and told him that he could request an appointment if he wished to discuss pain management. Floyd never alleges that he requested such an appointment. The closest Floyd comes to stating an actionable Eighth Amendment claim, based on his inability to obtain proper shoes, is when he asserts that shoes were not actually available for purchase in his cellblock. However, he does not allege that the prison officials who told him to purchase shoes from commissary knew the commissary in cellblock 8 did not sell shoes and, thus, lied or misled Floyd with deliberate indifference to his medical needs. Thus, at most, Floyd has alleged that officials mistakenly directed him to buy shoes from the commissary.

To the extent the claim is based on the Jail's decision not to allow Floyd to have ibuprofen on him 24-hours a day, the Court also finds dismissal is appropriate. Floyd explains the legitimate reason officials gave him for denying him constant access to ibuprofen: the risk that inmates may trade or sell the pills. This explanation, in itself, shows Jail officials were not deliberately indifferent to Floyd's medical needs. Jail officials knew Floyd needed pain pills, and gave them to him at intervals that minimized the risk that Floyd, or another inmate, would sell or trade the pills. Any discomfort Floyd felt was not inflicted "maliciously and sadistically," but "for legitimate reasons, such as

maintaining order or discipline in the prison." *See Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011). Thus, because Floyd has failed to allege Jail officials were deliberately indifferent to his medical needs, the Court finds dismissal of Claim Five is appropriate.

### *4. Claim Six: Shoulder Pain*

Finally, Floyd asserts that on August 24, 2015, he submitted a medical request form that advised the medical staff he was experiencing "[b]urning, stinging and [a] sharp pain in his left shoulder." Dkt. 8, at 10. A doctor evaluated Floyd, prescribed him ibuprofen, and took x-rays of his shoulder. *Id.* The x-rays revealed no fractures or dislocations. Id. However, Floyd asserts he was unable to dress himself without help and the ibuprofen was not sufficient to manage his pain. Id. A doctor at the jail prescribed Floyd a different medication and shoulder exercises. Despite these efforts, Floyd's pain and immobility continued to worsen. *Id.* Floyd filed a formal grievance on September 21, 2015. *Id.* Dr. Clive responded to the grievance. *Id.* Dr. Clive acknowledged the injury and stated that "the pain is reflective of an internal problem." *Id.* He also explained that because the Jail is a "short-term facility" it does not have a budget to perform "major procedures that aren't emergent." *Id.* He promised that the Jail would "continue to strive to provide [Floyd] with everything within our power to keep you as comfortable as possible;" however, he also advised that "if this plan isn't sufficient for you, you should discuss with you[r] lawyer the options of getting a furlough for this to be managed by an[] orthopedist." *Id.*

Floyd did not receive additional care for his shoulder until he was transferred from the Ada County Jail to the Idaho Correctional Facility in October of 2015. *Id.* At the

Idaho Correctional Facility medical staff gave Floyd a "hydrocodone shot to relie[ve] his pain" and physical therapy. Id. Floyd maintains that he has "suffered an approximately 20 percent lo[ss] in his left shoulder usage." *Id.* Floyd asserts that Jail officials violated his Eighth Amendment rights by failing to seek out a trained professional who could diagnose and treat his shoulder injury and that the violation of his rights was pursuant to a custom of policy of the Ada County Jail. *Id.*

### i. Statute of Limitations

Floyd asserted this claim within the statute of limitations.

### ii. Merits

The Court again finds dismissal of this claim for failure to sufficiently allege deliberate indifference is appropriate. Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Moreover, a delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. Courts have declined to find a valid Eighth Amendment claim if medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing

that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury." *Toguchi*, 391 F.3d at 1061.

Here, the Jail's medical staff was responsive to Floyd's medical needs. They evaluated Floyd's shoulder and provided him with some, although not optimal, treatment. The medical staff acknowledged that Floyd likely needed additional treatment, such as surgery, but was unable to provide additional treatment due to facility restraints. The staff provided the treatment they deemed was appropriate and necessary in the short term. Floyd's claim that he needed more advanced care immediately amounts only to a difference in opinion. Moreover, it is not clear from the Amended Complaint that the short (one or two month) delay in providing Floyd with more advanced treatment caused him additional harm. Floyd has alleged that he has lost 20 percent usage in his shoulder, but he has not alleged that this is due to the short delay in providing additional treatment. Finally, the staff informed Floyd that he could obtain additional treatment for his shoulder on his own through the standard practice of medical furloughs. Other district courts have found medical furloughs for non-emergency care, after jail staff have provided some treatment, is sufficient to meet constitutional requirements. *See Theurich v. Kitsap Cnty.*, 2016 U.S. Dist. LEXIS 60001 (W.D. Wash. May 5, 2016) (finding jail's medical furlough policy for non-emergent care was constitutionally sufficient as administered); *see also Greene v. Richard*, No. CV 16-0215-WS-MU, 2017 WL 3034542, at *7 n.6 (S.D. Ala. June 5, 2017). Floyd does not allege that he ever attempted to obtain a medical furlough. Accordingly, Floyd's allegations do not set forth a

cognizable Eighth Amendment claim. Again, the Court dismisses this claim, but gives Floyd leave to allege additional facts to support his claim.

## V. ORDER

IT IS HEREBY ORDERED:

1. The Motion to Dismiss (Dkt. 13) is GRANTED. Claims One, Two, and Four are DISMISSED WITH PREJUDICE. Claims Three, Five, and Six are DISMISSED WITHOUT PREJUDICE.

2. The Court GRANTS Floyd leave to amend his Amended Complaint to add additional facts to support Claims Three, Five, and Six. Floyd shall have 30 days from the issuance of this Memorandum Decision and Order to file a Second Amended Complaint. Failure to file a Second Amended Complaint by that deadline will result in the dismissal of this entire case with prejudice.

3. Floyd's Motion to Appoint Counsel (Dkt. 19) is DENIED.[4]

DATED: December 21, 2017

David C. Nye
U.S. District Court Judge

---

[4] "The court may appoint counsel under [28 U.S.C. §] 1915(d) only under 'exceptional circumstances.'" *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). In his filings, Floyd has "demonstrated sufficient writing ability and legal knowledge to articulate his claim[s]." *Id.* Moreover, "the facts he alleged and the issues he raised [are] not of substantial complexity" and he has not shown that he is likely to succeed on the merits of his claims. *Id.* Therefore, the Court finds denial of the Motion to Appoint Counsel is necessary.