UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES ALLEN FLOYD,<br><br>Plaintiff,<br><br>v.<br><br>ADA COUNTY, et al.,<br><br>Defendants. | Case No. 1:17-cv-00150-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

This matter comes before the Court on Defendants' Motion to Dismiss Second Amended Complaint. Dkt. 30. The Motion is fully briefed and ripe for decision. Having reviewed the record and briefs, the Court finds that the parties have adequately presented the facts and legal arguments. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without a hearing. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons outlined below, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss Second Amended Complaint.

## II. BACKGOUND

On August 25, 2014, officers arrested Floyd and placed him in the Ada County Jail, located in Boise, Idaho. Floyd remained there for a little over a year.[1] Floyd asserts that he has a host of medical problems that Ada County officials failed to adequately address during his time at the Ada County Jail.

On April 7, 2017, Floyd filed this lawsuit against Ada County, the Ada County Jail, the Ada County Sheriff, and a handful of staff members from both the Ada County Jail and the Sheriff's Department. On May 23, 2017, Defendants filed a Motion to Dismiss for Failure to State a Claim. Dkt. 4. Shortly thereafter, Floyd filed an Amended Complaint, rendering the first Motion to Dismiss moot. On June 16, 2017, Defendants filed a Motion to Dismiss the First Amended Complaint. This Court granted the Motion on December 21, 2017. Dkt. 27.

Floyd asserted six causes of action in his First Amended Complaint. Upon review, the Court found claims one, two, and four were time-barred. Accordingly, the Court dismissed those claims with prejudice. *Id.* The Court found claims three, five, and six, were not time-barred, but that Floyd had failed to allege sufficient facts to meet the Rule 8(a) pleading standard. *Id.* Accordingly, the Court dismissed those claims without

---

[1] Floyd first states that he remained at the Ada County Jail until August of 2016. Dkt. 29, at 2. However, he also states that he remained at the Ada County Jail for a year and was transferred to the Idaho State Correctional Facility in October of 2015. *Id.* at 9. Based on the other dates and timelines Floyd has asserted, the Court believes Floyd's statement that he remained in Ada County Jail until August 2016 was an inadvertent mistake.

prejudice and gave Floyd 30 days to file a Second Amended Complaint and set forth additional facts to support his claims. *Id.*

On January 19, 2018, Floyd filed his Second Amended Complaint, reasserting the following three claims: (1) inadequate mental health care; (2) inadequate treatment of foot pain; and (3) inadequate treatment of a shoulder injury. Dkt. 29. On February 2, 2018, Defendants filed the pending Motion to Dismiss. Dkt. 30. The Motion became ripe for decision on May 14, 2018.

In this Motion, Defendants first ask the Court to dismiss the individual defendants who have been named as Defendants but against whom Floyd has not made any allegations. Floyd does not respond to this argument, so the Court will dismiss these Defendants without further analysis. Second, Defendants ask the Court to dismiss the three asserted claims because they do not constitute an Eighth Amendment claim against any individual Defendants or against any government entity.

### III. LEGAL STANDARD

The Court set forth the legal standard regarding a 12(b)(6) motion to dismiss in its previous Memorandum Decision and Order granting Defendants' Motion to Dismiss the First Amended Complaint. Dkt. 27 at 3-4. The Court incorporates that standard here as if set forth in full. However, the Court reemphasizes that it must construe the Second Amended Complaint "liberally," as Floyd is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

# IV. ANALYSIS

## *A. The Applicable Law*

Floyd asserts all his claims under 42 U.S.C. § 1983. To state a claim against an individual "under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim against a government entity under § 1983 (also called a *Monell* claim), a plaintiff must allege "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997)). If Floyd fails to state a valid Eighth Amendment claim, he also fails to state a *Monell* claim because the first element of the *Monell* claim will not be satisfied.

In his Second Amended Complaint, Floyd asserts Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment in three distinct ways. The Court has previously explained the background and standards governing Eighth Amendment claims. Dkt. 27 at 7-8. The Court incorporates that law here as if set forth in full. In short, an actionable Eighth Amendment claim for inadequate medical care must meet two elements. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). First, the plaintiff must allege "the existence of a serious medical need." *Id.* An objective

standard applies to this element. *Id.* Second, the plaintiff must allege that a prison official was "deliberately indifferent." *Id.* A subjective standard applies to this element. *Id.* "A prison official is deliberately indifferent" under this standard "only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)).

### B. Application

#### 1. Claim Three: Mental Health Treatment

In Claim Three, Floyd alleges that Defendants provided him with inadequate mental health care. According to Floyd, shortly after officers arrested him, "he made several threats of suicide" and attempted suicide "by running his head into a brick wall." Dkt. 29, at 3. "[O]fficer Davis and several other officers" then placed Floyd in the "medical unit" where he wore a "turtle suit" for three days. *Id.* At the end of the three days, officers moved him to "Cell block 8." *Id.* On September 9, 2014, "jane doe 2" conducted a health assessment of Floyd, during which Floyd informed her that he suffered from depression, anxiety, and bi-polar disorder, and that he had been taking "Depakote and Seroquel" for two years to treat these conditions. *Id.*

On November 17, 2014, Floyd submitted a health request informing the medical staff that he was experiencing more symptoms of depression and anxiety because he was "being locked down" for so many hours each day. *Id.* When he did not receive a response to his request, Floyd submitted a grievance on December 15, 2014. *Id.* "Nurse Dean" responded to the grievance on December 15, 2014, by stating "you were scheduled to be seen on 11/21 you were seen on 11/21. All of these issues could have been addressed at

that time." *Id.* Nevertheless, Nurse Dean informed Floyd that he was scheduled to meet with a social worker. *Id.* Despite this assurance, Floyd "filed an appeal because it had been almost thirty days" since he had requested mental health care. *Id.* On December 26, 2014, an individual identified as "Woodcook"[2] responded to Floyd's grievance appeal and told him again that "he was scheduled to see a social worker." *Id.* Despite these assurances, Floyd asserts he "was never scheduled to see a social worker," but Nurse Dean and Woodcook only told him he was "to pacify [him] until he was released from the Ada county jail." Dkt 29, at 4.

Floyd asserts Nurse Dean treated him like a "nuisance" and, accordingly, that she did not schedule him to see a social worker. *Id.* Floyd also asserts that Ada County Jail employees never gave him the medication he had been taking for two years prior to his arrest to treat his depression, anxiety, and bi-polar disorder and that these employees never obtained his prior medical records, despite the fact that he gave them permission to do so. *Id.* All of these events, and the continual failure to treat Floyd's mental health problems, caused Floyd to "live[] inside a mental prison" for the duration of his stay at the Ada County Jail. *Id.* Finally, Floyd claims the failure to treat his mental health conditions was "based upon a custom and policy of the Ada County Jail, and or the private medical provider to understaff mental health providers in the jail to deal with the amount of mentally ill inmates in order to save money[ b]ecause they believe most inmates will be released soon or transferred out." *Id.*

---

[2] As previously noted, Floyd identifies this individual as "Woodcook" and "Woodcock." It appears Floyd is referring to Jason Woodcook.

The parties agree that Floyd has sufficiently alleged the first requirement of an Eighth Amendment claim—that he had a "serious medical need." He asserts that he had anxiety, depression, and bi-polar disorder. These conditions caused him to attempt suicide when he first arrived at the Ada County Jail. Later, these conditions caused him to "pick[] his fingers, bit[e] his nails, and sometime[s] punch[] hi[m]self in the head." Dkt. 29, at 3.

The parties do not agree on whether Floyd has sufficiently alleged the second requirement of an Eighth Amendment claim—that an individual defendant was deliberately indifferent to his medical needs. Previously, this Court found Floyd's third claim failed on this point, specifically because Floyd had not alleged that Nurse Dean was deliberately indifferent to his mental health needs. On amendment, Floyd has fixed this gap in his Complaint. He now alleges that Nurse Dean treated him as a "nuisance" and falsely told him he was scheduled to see a social worker to appease him. Such acts, if true, could constitute deliberate indifference.

Floyd has also alleged that he told "jane doe 2" that he was taking prescription medication for his depression, anxiety, and bi-polar disorder. Neither jane doe 2, nor any other Ada County Jail employee, confirmed this prescription by obtaining Floyd's medical records, or otherwise supplied Floyd with his prescribed medication during his entire stay at the Ada County Jail. These facts, if true, would also constitute deliberate indifference under the Eighth Amendment. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) (holding a prison official "acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon" when providing

or failing to provide prescribed medication); *see also Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500, 504 (9th Cir. 2017).

Finally, the Court turns to Floyd's *Monell* claim. Floyd has met the first requirement of a *Monell* claim: he has sufficiently alleged that individual state actors violated his Eighth Amendment rights. *See Dougherty*, 654 F.3d at 900. He also alleges that the failure to provide him with mental health treatment was based upon a custom and policy of the Ada County Jail and/or the private medical provider to understaff mental health providers in the jail in order to save money. This Court has previously held that prison understaffing "may amount to deliberate indifference to the safety and well-being of prison inmates, in violation of the Eighth Amendment." *Castillon v. Corr. Corp. of Am., Inc.*, No. 1:12-CV-00559-EJL, 2016 WL 3676116, at *7 (D. Idaho July 7, 2016). To prevail on a *Monell* claim based on understaffing, a plaintiff "must prove Defendant had a policy of deliberate indifference to the risk of understaffing and that this policy caused their injuries." *Id.* (citing *Greason v. Kemp*, 891 F.2d 829, 838 (11th Cir. 1990)). Moreover, "[w]hen understaffing appears to have contributed to a violation of an inmate's Eighth Amendment rights, a causal link exists between that violation and the prison's policy if officials are aware of the staffing problem but fail to take corrective action." *Id.* This Court has also specifically held that prisons must employ "trained mental health professionals . . . in sufficient numbers to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders." *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984).

Here, Floyd alleges the Ada County Jail had a deliberate policy of understaffing its mental health professionals, and that this understaffing caused him to receive inadequate mental health treatment during the entire duration of his time at the Ada County Jail. These allegations are sufficient to satisfy the remainder of the requirements of Floyd's *Monell* claim.

### 5. Claim Five: Foot Pain and Pain Management

In Claim Five, Floyd alleges he experienced severe foot pain while at the Ada County Jail and that Defendants failed to examine him, diagnose him, treat him, or provide him with adequate medication for pain management. Dkt. 29, at 4-5. Specifically, Floyd asserts that he developed severe foot pain in March of 2015 that greatly hindered his ability to walk. *Id.* at 4. On April 1, 2015, Floyd submitted a medical request for shoes. *Id.* A staff member ("unknown jane doe 3") denied this request, stating, "we don't give shoes." *Id.* On an unspecified date, Floyd resubmitted his request for shoes. *Id.* A staff member again denied the request, stating, "inmate worker shoes are available off commissary, per protocol you do not qualify for special shoes." *Id.* at 5. On a later unspecified date, Floyd filed a formal grievance in which he stated he never received a medical diagnosis for his foot pain, that he could not purchase shoes himself because he was indigent, and that the pain was "affect[ing] [his] ability to walk daily." *Id.*

Woodcook responded to the grievance on April 15, 2015, by stating (1) that shoes were available for purchase on commissary; (2) that the "medical department does not supply and/or prescribe orthotic shoes for inmates"; (3) that he was already taking 600 milligrams of ibuprofen each day to help him manage his pain; (4) that he could have

orthotics prescribed by a community doctor brought to the jail; and (5) that he could request an appointment if he wished to discuss pain management. *Id.* Floyd maintains that several of Woodcook's assertions were false. First, he claims shoes were not actually available for purchase on commissary in his cell block (cell block 8). *Id.* Second, he asserts "Ada county does have [a] policy and procedures for the issuing of shoes to diabetic[s] to deal with the neuropathy foot pain." *Id.* at 6. Floyd appealed Wookcook's denial of this grievance. *Id.* A supervisor named "Rankin" apparently denied the appeal. *Id.*

On June 3, 2015, Floyd filed a grievance concerning access to pain medications. *Id.* According to Floyd, his ibuprofen was supposed to be "keep on person" medication, so that he could take it whenever he needed it. *Id.* He complained that he did not always have access to the ibuprofen, and sometimes went long stretches of time without it. *Id.* Someone identified as "Farewell" responded to the grievance by explaining that there is a risk the inmates may sell or trade the medication, so Floyd could not have access to it at all times. *Id.* Floyd argues this justification is invalid as inmates could purchase ibuprofen "off commissary." *Id.*

As an initial matter, Defendants no longer argue that this claim is time-barred. Accordingly, the Court will not address this issue, which was an open question when the Court issued its last decision.

Next, the Court will assume that Floyd's foot pain constitutes a "serious medical need" as Defendants do not provide argument on this point. Indeed, at this stage, Floyd's asserted medical need appears "serious." Floyd describes his foot pain as "neuropathy

MEMORANDUM DECISION AND ORDER –10

(nerve Pain)" caused by his "borderline" diabetes, which "left untreated can lead to amputation of the limb." *Id*. at 5.

Defendants do, however, provide argument on whether Floyd has sufficiently alleged the "deliberate indifference" requirement. Floyd alleges that Defendants were deliberately indifferent to his foot pain in three ways: (1) failing to examine and diagnose his foot pain; (2) failing to provide him with shoes; and (3) failing to provide him with pain medication to keep with him at all times.

As to Floyd's first allegation, it appears dismissal is not appropriate. Floyd asserts that he told Woodcook, and others, that he was experiencing severe foot pain and "no one ever looked at [him] to make a medical Diagnoses." *Id.* If true, this amounts to a "fail[ure] to respond to a prisoner's pain or possible medical need," which is sufficient to state a claim of deliberate indifference. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Lolli v. Cty. of Orange*, 351 F.3d 410, 420 (9th Cir. 2003) ("[A] constitutional violation may take place when the government does not respond to the legitimate medical needs of a detainee whom it has reason to believe is diabetic.").

Floyd's first allegation, about Defendants' failure to examine or diagnose his foot pain, is the heart of Claim Five. Floyd's second allegation, that Defendants failed to provide him with shoes, is ancillary. Defendants may not have decided, upon proper examination and diagnosis, that providing Floyd with different shoes was the proper course of treatment. Thus, the Court cannot conclude that Defendants' specific refusal to

(nerve Pain)" caused by his "borderline" diabetes, which "left untreated can lead to amputation of the limb." *Id*. at 5.

Defendants do, however, provide argument on whether Floyd has sufficiently alleged the "deliberate indifference" requirement. Floyd alleges that Defendants were deliberately indifferent to his foot pain in three ways: (1) failing to examine and diagnose his foot pain; (2) failing to provide him with shoes; and (3) failing to provide him with pain medication to keep with him at all times.

As to Floyd's first allegation, it appears dismissal is not appropriate. Floyd asserts that he told Woodcook, and others, that he was experiencing severe foot pain and "no one ever looked at [him] to make a medical Diagnoses." *Id.* If true, this amounts to a "fail[ure] to respond to a prisoner's pain or possible medical need," which is sufficient to state a claim of deliberate indifference. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Lolli v. Cty. of Orange*, 351 F.3d 410, 420 (9th Cir. 2003) ("[A] constitutional violation may take place when the government does not respond to the legitimate medical needs of a detainee whom it has reason to believe is diabetic.").

Floyd's first allegation, about Defendants' failure to examine or diagnose his foot pain, is the heart of Claim Five. Floyd's second allegation, that Defendants failed to provide him with shoes, is ancillary. Defendants may not have decided, upon proper examination and diagnosis, that providing Floyd with different shoes was the proper course of treatment. Thus, the Court cannot conclude that Defendants' specific refusal to

provide Floyd with another pair of shoes amounted to deliberate indifference, except to the extent that these requests put Defendant on notice of Floyd's medical needs.

As to Floyd's third allegation, that Defendants were deliberately indifferent to his medical needs by refusing to allow him to have ibuprofen on him 24-hours a day, the Court finds dismissal is also not appropriate. Previously, the Court took issue with two aspects of this allegation. First, the Court pointed out that Floyd failed to request a pain management appointment as Woodcook directed him to. Floyd now asserts he did not submit an inmate request form ("IRF") as directed, because to do so would have constituted an "abuse of the IRF system," subjecting him to disciplinary action. Dkt. 34, at 6. It is unclear if this is an accurate statement, but, at this stage, the Court must accept all facts as alleged by Floyd as true.

Second, the Court previously pointed out that prison officials had given a legitimate reason for not allowing Floyd, and other inmates, to have ibuprofen in their cells: there was a risk that inmates may trade or sell such pills. Generally speaking, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Floyd now argues the reason prison officials gave for restricting his access to ibuprofen is not legitimate and not related to penological interests. In support of this assertion, Floyd points to the fact that inmates may purchase ibuprofen at commissary, which they can then trade or sell. Again, the Court must accept Floyd's assertions as true at this stage. Defendants will have an opportunity to defend its policy or disprove Floyd's statements at later stages in this litigation. However, based on the facts

as Floyd has asserted them, the Court cannot dismiss this claim at this time based upon Defendants' asserted policy. Floyd has alleged that prison officials ignored the instructions of a treating physician that he was to keep ibuprofen on his person at all times; this is sufficient to state a claim of deliberate indifference. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999).

Finally, the Court turns to the question of whether Floyd has stated a *Monell* claim based on the above facts. Floyd has not asserted that Woodcook's (and others') failure to respond to his complaints of foot pain were the result of an Ada County Jail custom or policy. However, Floyd has alleged that Defendants' "denial of access to his pain mediation was based upon a security custom or policy." Dkt. 29, at 7. Defendants appear to agree with this statement. The Court finds this allegation is sufficient to state a *Monell* claim.

### *4. Claim Six: Shoulder Pain*

Finally, Floyd asserts that on August 24, 2015, he submitted a medical request form that advised the medical staff he was experiencing "[b]urning, stinging and [a] real sharp pain in his left shoulder." Dkt. 29, at 7. A doctor evaluated Floyd, prescribed him ibuprofen, and took x-rays of his shoulder. *Id.* The x-rays revealed no fractures or dislocations. *Id.* Floyd asserts this course of diagnosis was insufficient because he believed he was experiencing "tissue, muscle or tendon damage, or nerve damage," which an x-ray would not have shown. *Id.* Floyd was still unable to dress himself or "push himself up off his bunk without help," and the ibuprofen was not sufficient to manage his pain. *Id.* at 7-8. A doctor at the jail then prescribed Floyd different pain

medication and shoulder exercises. *Id.* Despite these efforts, Floyd's pain and immobility continued to worsen. *Id.*

Floyd filed a formal grievance on September 21, 2015. *Id.* "Dr. Clive" responded to the grievance. *Id.* Dr. Clive acknowledged the injury and stated that "the pain is reflective of an internal problem." *Id.* He also explained that because the Jail is a "short-term facility" it does not have a budget to perform "major procedures that aren't emergent." *Id.* He promised that the Jail would "continue to strive to provide [Floyd] with everything within [its] power to keep [him] as comfortable as possible;" however, he also advised that "if this plan isn't sufficient for you, you should discuss with you[r] lawyer the options of getting a furlough for this to be managed by an[] orthopedist." *Id.* Floyd argues he would not have qualified for a medical furlough because (1) he "was being held on a $75,000[] bond for two felon[y] charges"; (2) the court had already denied his two applications for property bonds; (3) he had "a prior sex offense conviction on his record"; (4) he had no money to make an appointment due to the fact that he had been incarcerated for the past year; and (5) he had no family to take custody of him for the furlough. *Id.* He also argues that by the time he applied for and received a furlough the damage to his shoulder through muscle atrophy would have already been complete. *Id.* Floyd maintains that the delay in treatment "resulted in a [permanent] loss of 20% of [his] shoulder functions creating a lifelong handicap." *Id.* at 9.

Floyd did not receive additional care for his shoulder until he was transferred from the Ada County Jail to the Idaho Correctional Facility in October of 2015. *Id.* At the Idaho Correctional Facility medical staff gave Floyd a "hydrocodone shot to relie[ve] his

pain" and physical therapy. *Id.* Floyd asserts that Dr. Clive violated his Eighth Amendment rights by providing ineffective, cursory treatment that "deviated from the normal medical standards as it amounted to no treatment at all." *Id.* He insists that Dr. Clive should have referred him to an outside specialist instead of placing the burden on him to obtain a furlough. *Id.* He also asserts that the failure to address his medical needs was based upon the Ada County Jail's custom or policy of deferring treatment on inmates until they are released in order to save money. *Id.*

Although the Court is sympathetic to Floyd's shoulder injury, it must dismiss this claim as Floyd has not alleged that Dr. Clive was "deliberately indifferent" to his needs. "A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986). "A prison inmate also does not have a right to treatment for conditions that are not readily amenable to treatment." *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007). Thus, Floyd had no constitutional right to have an outside specialist diagnose his shoulder pain or perform shoulder surgery, if necessary.

Floyd certainly disagrees with the treatment Dr. Clive provided during his stay at the Ada County Jail. However, such differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically

unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Floyd has asserted that Dr. Clive's treatment was so deficient that it amounted to "no treatment at all," but the facts as asserted by Floyd do not support this conclusory proclamation. Dr. Clive was "consistently responsive to [Floyd's] medical needs" in providing him with different pain medication and additional shoulder exercises. *Id.* at 1061. He also explained to Floyd the other options available to him if he continued to be unsatisfied. Such acts do not constitute a "conscious disregard" for Floyd's needs. *Id.* The question of whether prison officials should have employed additional diagnostic techniques or forms of treatment "is a classic example of a matter for medical judgment" and therefore not an appropriate basis for grounding liability under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97,107 (1976). Floyd has not alleged that Dr. Clive's treatment was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Estelle*, 429 U.S. at 105-06) (internal quotation marks and alterations omitted). Therefore, the Court must dismiss this claim.

///
///
///
///
///
///

# V. ORDER

IT IS HEREBY ORDERED:

1. The Motion to Dismiss Second Amended Complaint (Dkt. 30) is GRANTED IN PART AND DENIED IN PART as follows:

    a. The following Defendants are DISMISSED from this case as Floyd has failed to assert any claims against them: "Mr. Mowjee," "Mr. King," "Officer Rodante," "Mr. Carda," "Mr. Hine," "P.A. Wells," "Sgt. Rhoades," "Mr. Jensen," "Stephen Bartlett," and "Sheriff Raney."

    b. Claim Six is DISMISSED WITH PREJUDICE and "Dr. Clive" is DISMISSED from this case.

    c. Floyd may proceed with the following claims:

        i. Floyd may proceed with Claim Three as a § 1983 claim against individual defendants "Nurse Dean," "Mr. Woodcook," and "Jane Doe 2," and as a *Monell* claim against Ada County and the Ada County Jail.

        ii. Floyd may proceed with Claim Five as follows:

            1. To the extent Floyd alleges Defendants violated his Eighth Amendment rights by failing to examine and diagnose his foot pain, Floyd may proceed with a § 1983 claim against individual defendants "Woodcook," "Rankin," and "Jane Doe 3."

2. To the extent Floyd alleges Defendants violated his Eighth Amendment rights by restricting his access to pain medication, Floyd may proceed with a § 1983 claim against individual defendants "Woodcook," "Rankin," and "Farewell," and may proceed with a *Monell* claim against Ada County and the Ada County Jail.

DATED: June 29, 2018

David C. Nye
U.S. District Court Judge