UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES ALLEN FLOYD,<br><br>Plaintiff,<br><br>v.<br><br>ADA COUNTY, et al.,<br><br>Defendants. | Case No. 1:17-cv-00150-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff James Allen Floyd's "Rule 60 B" Motion (Dkt. 48) and a Renewed Motion for Appointment of Counsel (Dkt. 49). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT in PART and DENY in PART Floyd's Rule 60(b) Motion and DENY his Motion for Appointment of Counsel.

## II. BACKGROUND

On August 25, 2014, officers arrested Floyd and placed him in the Ada County Jail, located in Boise, Idaho. Floyd remained there for approximately one year. Floyd

asserts that he has numerous medical problems which Ada County officials failed to adequately address during his time at the Ada County Jail.

On April 7, 2017, Floyd filed this lawsuit against Ada County, the Ada County Jail, the Ada County Sheriff, and a handful of staff members from both the Ada County Jail and the Sheriff's Department. On May 23, 2017, Defendants filed a Motion to Dismiss for Failure to State a Claim. Dkt. 4. Shortly thereafter, Floyd filed an Amended Complaint, rendering the first Motion to Dismiss moot. On June 16, 2017, Defendants filed a Motion to Dismiss the First Amended Complaint. The Court granted the Motion on December 21, 2017, but gave Floyd an opportunity to amend his complaint to comply with its order. Dkt. 27. On January 19, 2018, Floyd filed a Second Amended Complaint. Dkt. 29.

Defendants subsequently filed a third Motion to Dismiss. Dkt. 30. Upon review, the Court granted in part and denied in part Defendants' motion, striking some of Floyd's claims in their entirety, but allowing him to proceed on two Eight Amendment claims: one for inadequate mental health treatment and one for inadequate treatment of foot pain. Dkt. 36. The Court allowed Floyd to continue with each claim against certain individuals and collectively as *Monell*[1] claims against Ada County and the Ada County Jail.

Following the Court's decision outlining Floyd's viable claims, the parties were advised that they needed to file a joint litigation plan and discovery plan. Dkt. 38. Defendants indicate that although they tried to contact Floyd on multiple occasions, they

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). A *Monell* claim is a due process, or 42 U.S.C. § 1983 claim, against a municipality.

were never able to do so. Dkt. 40. The Court and counsel waited five months for Floyd to weigh in on these matters.

Ultimately, on December 18, 2018, Defendants filed their own discovery plan (Dkt. 42) and litigation plan (Dkt. 43), noting that neither had been stipulated to by Floyd. Absent any input from Floyd, on January 8, 2019, the Court entered its Scheduling Order adopting Defendants' proposed dates. Dkt. 44. As the Court does with all pro se plaintiffs—including prisoner plaintiffs—it sent Floyd a copy of this order. On January 23, 2019, the Court's Scheduling Order was returned as undelivered. Dkt. 45. Ironically, around the same time, Floyd contacted the Court asking for a copy of the docket sheet. Dkt. 46. Noting that this request (Dkt. 46) had a different address from that which was on file, the Court corrected Floyd's address and again sent the above information.

On February 13, 2019, Floyd filed a motion—entitled "Rule 60 B" motion—asking the court to "set aside the scheduling order dated January 8, 2019, and other rulings back to 7/20/2018." Dkt. 48, at 1. On the same day, Floyd filed a Motion for Appointment of Counsel. Dkt. 49. The Court will address each in turn.

### III. ANALYSIS

**A. "Rule 60 B" Motion (Dkt. 48)**

In his first Motion, Floyd asks that the Court "set aside" the current Scheduling Order under Federal Rule of Civil Procedure 60(b). Rule 60(b) states that "on Motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order, or proceeding," for certain enumerated reasons. While none of the reasons outlined

in Rule 60(b)(1) – (5) appear to apply here,[2] there is a catch all provision (subsection (6)) which allows the Court to grant relief for "any other reason that justifies relief."

Floyd explains that he because he "suffers from ADHD, Bi-Polar [disorder], [] manic depression, and [because he underwent] an MRI for a Brain Tumor in July 2018," the Court should grant him some type of reprieve from its Scheduling Order. Dkt. 48, at 1. Additionally, Floyd asserts that he is currently in the custody of the Defendants and no longer has access to his legal materials.

Although the Court is sympathetic to Floyd's plight, there are two problems with his request. First, there is no documentation to support any of Floyd's medical claims. Assuming the veracity of Floyd's claims, there is still no clear explanation for Floyd's complete failure to respond in any way to opposing counsel or to the Court for approximately nine months. Second, Floyd has not identified any specific relief that would remedy his concerns. Broadly asking the Court to "set aside" the Scheduling Order is not appropriate. If Floyd desired an extension of the deadlines in the Scheduling Order in order for him to "get back on track," Dkt. 48, at 2, he should have asked for such. At the current juncture, however, the Court is left to speculate on an appropriate course of

---

[2] These reasons include:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void; [or]
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

action and whether it will remedy Floyd's concerns.³

Absent some specific request or timeframe, the Court will not wholesale dismiss its Scheduling Order. That said, Floyd's recent incarceration has clearly resulted in delays in mailing and communication, and has limited his ability to access legal materials generally, as well as to his personal legal items. Accordingly, the Court will extend the remaining deadlines in its Scheduling Order (Dkt. 44) sixty (60) days. This extension **will not** apply the long-expired deadline for joinder of parties or to amend pleadings, but will apply to all remaining deadlines.⁴

To avoid any confusion, the Court outlines the following new deadlines by reference to their appropriate sections within its scheduling order (Dkt. 44). While the dates may change, the substantive instructions for each section still apply. The new deadlines are:

1. Dispositive Motion Deadline: August 20, 2019.

5. Completion of Factual Discovery: July 21, 2019.

6. Disclosure of Experts:

    a. Plaintiff's disclosure: June 24, 2019.

    b. Defendants' disclosure: July 24, 2019.

---

³ Absent medical records, the Court is unsure whether Floyd is currently undergoing treatment, or generally what the status of any of his medical conditions are. Further, Floyd does not indicate what additional time, if any, he will need in order to properly continue in this litigation.

⁴ During the time this Motion has been pending on the Court's docket, certain expert disclosure deadlines have passed. The Court is unaware of whether Floyd (or Defendants for that matter) have complied with those deadlines or—awaiting the Court's decision on the instant motions—elected to do nothing. In an abundance of caution, the Court will extend the expert disclosure deadlines in order to provide new deadlines that both sides can comply with.

MEMORANDUM DECISION AND ORDER - 5

c. Rebuttal experts: August 6, 2019.

d. Expert Discovery: August 9, 2019.

These generous extensions by the Court will not be extended further. While the Court is essentially giving Floyd the "benefit of the doubt" on his asserted failures to comply with the Court's scheduling order thus far—providing Floyd his requested opportunity to get back up to speed—any request for a further extension will not be met with such leniency.

In short, Floyd's Motion is GRANTED in PART and DENIED in PART as outlined above.

### B. Motion to Appoint Counsel (Dkt. 49)

As the Court noted in its prior decision:

> "The court may appoint counsel under [28 U.S.C. §] 1915(d) only under 'exceptional circumstances.'" *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). In his filings, Floyd has "demonstrated sufficient writing ability and legal knowledge to articulate his claim[s]." *Id.* Moreover, "the facts he alleged and the issues he raised [are] not of substantial complexity" and he has not shown that he is likely to succeed on the merits of his claims. *Id.* Therefore, the Court finds denial of the Motion to Appoint Counsel is necessary.

Dkt. 27, at 24.

In his current Motion, Floyd alleges that the law library he has access to is only open during certain hours of the day and on certain days of the week and that he is only given a limited amount of time to utilize it. Floyd also references his mental conditions in

MEMORANDUM DECISION AND ORDER - 6

support of his request for an attorney. There is no doubt that Floyd, like any other pro se litigant, would benefit from the assistance of counsel. *See Rand v. Rowland,* 113 F.3d 1520, 1525 (9th Cir. 1997). But Floyd has not pointed to exceptional circumstances warranting appointment.

Floyd's argument that he has limited knowledge of the law and limited access to a law library or other legal materials is not based on the complexity of the legal issues involved in this specific case, but rather on the general difficulty of litigating pro se. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) ("If all that was required to establish successfully the complexity of the relevant issues was a demonstration of the need for development of further facts, practically all cases would involve complex legal issues.").

In short, Floyd's concerns do not rise to the level of exceptional circumstances. As the Court previously noted, Floyd has demonstrated sufficient writing ability and legal knowledge to articulate his claims. Moreover, the issues themselves are not overly complex. Therefore, in its discretion, the Court finds that Floyd has not met his burden and his request for Appointment of Counsel is DENIED.

## V. ORDER

1. Floyd's Rule 60 B Motion (Dkt. 48) is GRANTED in PART and DENIED in PART. The Court will not "set aside" its Scheduling Order; however, the Court will extend the relevant deadlines in that order—as outlined above—in order to accommodate Floyd's medical issues and recent incarceration.
2. Floyd's Motion for Appointment of Counsel (Dkt. 49) is DENIED.

3. In both of his motions, Floyd requests copies of certain documents from the Court. The Clerk is hereby directed to send Floyd a copy of the docket sheet, as well as copies of Dkts. 1, 8, 29, 30, 34, 35, 36, 44, 48, and 52. The Clerk shall also send Floyd an unbound copy of the Local Rules for the District of Idaho.

DATED: May 21, 2019

_____
David C. Nye
Chief U.S. District Court Judge